IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JOSEPH PERONACE**, <br><br> Plaintiff, <br><br> v. <br><br> **CITY OF PHILADELPHIA**, <br><br> Defendant. | CIVIL ACTION <br><br> NO. 23-3943-KSM |

MEMORANDUM

Marston, J.                                                                                         December 12, 2023

Plaintiff Joseph Peronace brings claims against the City of Philadelphia for "negligent, reckless, and outrageous conduct" and "civil rights [violations] under 42 U.S.C. § 1983" for injuries that he suffered while incarcerated at Philadelphia's Curran Fromhold Correctional Facility ("CFCF"). (Doc. No. 8 at 4–5.) The City moves to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). For the reasons discussed below that motion is granted.

I.      **FACTUAL BACKGROUND**

The Amended Complaint[1] focuses on three categories of misconduct that Peronace alleges occurred while he was incarcerated at CFCF from May 19 to May 31, 2022. (Doc. No. 8 at ¶ 6.)

First, Peronace alleges that during intake on May 19, a member of the facility's medical staff was unable to locate a viable vein for a blood draw. (*Id.* at ¶ 7.) As a result, Peronace was designated as non-compliant and housed in "C-block." (*Id.* at ¶ 8.) After he was placed into a

---

[1] In deciding the City's motion to dismiss, the Court accepts as true the allegations in the Amended Complaint. *See Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

cell, Peronace suffered three seizures which caused his legs to become numb and unresponsive, and which left him unable to bear weight or move around his cell, including to the toilet, without assistance.  (*Id.* at ¶¶ 9–11.)  Peronace alleges that on several occasions prison staff ignored his repeated requests for assistance with using the toilet, causing him to soil himself and sit in his excrement for extended periods of time.  (*Id.* at ¶¶ 12–13.)

Second, Peronace claims, without additional detail, that on three occasions his jail cell "was unlocked" and unknown individuals "were permitted" to enter his cell and assault him with "punches and kicks."  (*Id.* at ¶¶ 14, 19, 21.)

Third, Peronace alleges that prison staff ignored his repeated requests for medical treatment until May 30 or 31, 2022, when he was transferred to Jefferson Torresdale Hospital.  (*Id.* at ¶¶ 15–16.)

Peronace claims that in each instance, the City "acted through its employees, agents and prison guards/correctional officers."  (*Id.* at ¶¶ 17, 18.)  He also alleges that the City "owned, operated, managed, controlled, [and] supervised the daily operations and running of" CFCF.  (*Id.* at ¶ 3.)

## II.     PROCEDURAL HISTORY

Peronace filed this action in the Court of Common Pleas for Philadelphia County on September 13, 2023.  (Doc. No. 1 at ¶ 1.)  The City removed the case to this Court on December 12, 2023, and because the Complaint did not include separate counts identifying the claims asserted against the City, the City moved for a more definite statement under Federal Rule of Civil Procedure 12(e).  (Doc. No. 3.)  On November 6, 2023, Peronace filed an Amended Complaint (Doc. No. 8), and the Court denied as moot the motion for more definite statement (Doc. No. 9).

The Amended Complaint largely reiterates the factual averments stated in the Complaint

and identifies two counts against the City.  (Doc. No. 8.)  In Count I, Peronace brings a claim for "negligent, reckless, and outrageous conduct" for the denial of medical care and for conduct which allowed "unknown and unidentified individuals to enter the Plaintiff's jail cell to assault him."  (*Id.* at ¶ 23.)  In Count II, Peronace brings a claim for civil rights violations under § 1983, asserting that the City violated, among other things, his "right to liberty; right to reasonable personal safety while in custody; right to medical care when in custody; . . . right to be free from cruel and unusual punishment; and . . . [his right to] substantive and procedural due process as guaranteed by the Fourth, Fifth, Eighth, and Fourteenth Amendment[s]."  (*Id.* at ¶¶ 26–27.)  The City now moves to dismiss the Amended Complaint for failure to state a claim under Rule 12(b)(6).  (Doc. No. 10.)

### III.    LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  In determining whether this standard is met, the court must accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn from those allegations.  *Phillips*, 515 F.3d at 228.  That said, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft*, 556 U.S. at 678.

### IV.    DISCUSSION

The City moves to dismiss the Amended Complaint in its entirety.  The Court addresses the City's arguments as to Count I and Count II in turn.

### A.     Count I: Negligent, Reckless, and Outrageous conduct

First, the City argues that Count I, which is labeled "negligent, reckless, and outrageous conduct," is prohibited by the Pennsylvania Political Subdivision Tort Claims Act (the "Tort Claims Act").  (Doc. No. 10 at 5.)  The Court agrees.

The Tort Claims Act provides that "no local agency shall be liable for any damages on account of any injury to a person or property caused by an act of the local agency or an employee thereof."  42 Pa. Stat. & Cons. Ann. § 8541.  That said, "[a] local agency or its employees may be liable for claims of negligence that fall into one of the nine enumerated exceptions under Section 8542(b) of the Tort Claims Act."  *James v. Cmty. Coll. of Allegheny Cnty.*, No. 1303 C.D. 2019, 2021 WL 3701746, at *3 (Pa. Cmw. Ct. Aug. 20, 2021).  These exceptions are vehicle liability; care, custody or control of personal property; real property; trees, traffic controls, and street lighting; utility service facilities; streets; sidewalks; care, custody or control of animals; and sexual abuse.  42 Pa. Stat & Cons. Ann. § 8542(b)(1)–(9).  The conduct about which Peronace complains does not fall into any of these exceptions, and therefore, his state law claim in Count I is barred by the Tort Claims Act.  *See Hernandez v. York County*, 288 F. App'x 781, 783 (3d Cir. 2008) (holding district court correctly found the Tort Claims Act immunized York County from plaintiff's state law claims arising from his incarceration at County prison).

Peronace seems to concede that his state law claims are barred by the Tort Claims Act, emphasizing that "[t]he main thrust of the Plaintiff's Complaint [is] that his civil rights under the Eight[h] Amendment have been violated," not "state law claims."  (Doc. No. 11 at 4.)  He then baldly states that "[i]t may be the inclusion of the word 'negligent' which triggered the Defendant's assumption that this Count applied to the Pennsylvania Political Subdivisions Tort Claims Act, but this is not the case."  (*Id.* at 5.)  Given that Peronace chose to label Count I as

4

sounding in negligence,[2] he can hardly blame the City (or the Court) for taking him at his word—especially given prior motion practice on Peronace's failure to clarify the scope of his claims.

Focusing on the Amended Complaint as phrased, Count I is impermissible against the City, and therefore, dismissed with prejudice. To the extent Peronace meant to state a constitutional claim for violations of the Eighth Amendment, the Court analyzes that claim below in connection with Count II.

### B.     Count II: Civil Rights Under 42 U.S.C. § 1983

In Count II, Peronace brings a claim for civil rights violations under § 1983, arguing that the City violated, among other things, his "right to liberty; right to reasonable personal safety while in custody; right to medical care when in custody; . . . right to be free from cruel and unusual punishment; and . . . [his right to] substantive and procedural due process as guaranteed by the Fourth, Fifth, Eighth, and Fourteenth Amendment." (Doc. No. 8 at ¶¶ 26–27.) In his response to the motion to dismiss, Peronace focuses only on his Eighth Amendment right to be free from cruel and unusual punishment. (*See* Doc. No. 11 at 6 ("As set forth above, the instant claim is based on violations of the Plaintiff's Eighth Amendment rights as brought pursuant to § 1983 as the vehicle for bringing such an action.").)

Section 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the

---

[2] As a reminder, "the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Pennsylvania ex rel. Zimmerman v. PepsiCo., Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (quotation marks omitted); *Ernst v. Union Cnty. Conservation Dist.*, Civil Action No. 4:21-CV-1702, 2023 WL 6276698, at *12 n.65 (M.D. Pa. Sept. 26, 2023) (same).

...
...
...

> Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "[T]o state a claim under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States, and second, that the alleged deprivation was committed or caused by a person acting under color of state law." *Jenkins v. Cordova*, Civ. No. 22-6482 (KM) (CLW), 2023 U.S. Dist. LEXIS 84428, *9 (D.N.J. May 15, 2023) (citing *Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011)).

Local governments and municipalities are considered persons under § 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). A municipality, however, "may not be held liable for constitutional torts under § 1983 on a vicarious liability theory rooted in *respondeat superior*." *Mulholland v. County of Berks*, 706 F.3d 227, 237 (3d Cir. 2013); *see also Monell*, 436 U.S. at 690 (explaining that local government and municipalities may be sued directly under § 1983 when "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers"). Instead, there are two different ways for a § 1983 claim against a municipality to proceed: "[a] plaintiff may put forth that an unconstitutional policy or custom of the municipality led to his or her injuries, or that they were caused by a failure or inadequacy by the municipality that reflects a deliberate or conscious choice." *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019) (quotation marks and citations omitted).

"Policy is made when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Mulholland*, 706 F.3d at 237 (quotation marks omitted). And a "course of conduct is considered to be a 'custom' when, though not authorized by law, such practices of state officials are so permanent and well-settled as to virtually constitute law." *Id.* (quotation marks omitted). "[W]hen the

absence of action denies individuals their constitutional rights, the failure to act can amount to a policy or custom." *Newsome*, 2020 WL 6730946, at \*6 (citing *Simmons v. City of Philadelphia*, 947 F.2d 1042, 1060–61 (3d Cir. 1991)).

"On the other hand, one whose claim is predicated on a failure or inadequacy," need not identify a municipal policy or custom, and instead, "has the separate, but equally demanding requirement of demonstrating a failure or inadequacy amounting to deliberate indifference on the part of the municipality." *Forrest*, 930 F.3d at 106.  A plaintiff satisfies this standard by alleging: "(1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id.*

Here, the City argues that Peronace has not alleged facts tending to suggest a municipal policy, custom, or deliberate indifference caused his injuries, and instead, impermissibly seeks to hold it liable under a theory of vicarious liability.  (Doc. No. 10 at 7.)  Peronace responds that he has sufficiently alleged that he was injured by an inadequate City policy or custom:

> [B]ased on the clear language of the [Amended] Complaint, all actions are attributable to the [City] based on [its] ownership, operation, management, control, and supervision of the subject jail. . . . This supervision and control is the main thrust of a *Monell* claim, as the inadequacy of the Defendant's official policy or custom caused a violation of the Plaintiff's Constitutional rights, which has been clearly pled in the [Amended] Complaint.

(Doc. No. 11 at 7–8.)  But contrary to this argument, Peronace has not "clearly" identified which City policy or custom he believes is inadequate and caused the alleged violations of his Eighth Amendment rights.  S*ee Losch v. Borough of Parkesburg*, 736 F.2d 903, 910 (3d Cir. 1984) ("A plaintiff must identify the challenged policy, attribute it to the city itself, and show a causal link between execution of the policy and the injury suffered.").  Peronace alleges that unidentified CFCF employees denied him access to necessary medical care, left him in his cell in an

unsanitary condition, and allowed him to be assaulted in his cell.  (*See* Doc. No. 8.)  He does not identify a City policy that explicitly authorized this conduct, nor has he alleged similar conduct was suffered by other prisoners, such that the Court could infer CFCF has a custom of denying prisoners access to necessary medical care, of leaving prisoners to lie in their excrement, of leaving cells unlocked, or of allowing unknown individuals to assault prisoners in their cells.[3]

      To the contrary, Peronace has alleged only that the City "owned, operated, managed, controlled, [and] supervised the daily operations and running" of CFCF and that it "acted through the conduct of [its] servants, agents, and employees."  (Doc. No. 8 at ¶¶ 4–5.)  This is insufficient under *Monell*.  *See Russell v. City/Town of Hammonton*, Civil No. 15-1669 (NLH/KMW), 2015 WL 8780460, at *3 (D.N.J. Dec. 15, 2015) ("Plaintiff in this case has properly named the municipality, Hammonton, as a defendant in this action.  However, with respect to Hammonton's involvement, Plaintiff alleges that Hammonton 'owned an[d] maintained the Hammonton Police Department and employed the individual defendant[s] sued herein' and is 'responsible for the policy of procedures implemented through its various agencies.'  This statement is insufficient to establish liability under *Monell*." (citation omitted)); *see also Taylor v. Pennsylvania*, CIVIL ACTION NO. 17-3369, 2018 WL 6574187, at *10 (E.D. Pa. Dec. 12, 2018) ("Although Plaintiff pleads numerous instances of mail tampering by individual prison employees, he never links these incidents to custom, policy, or a pattern of deliberate indifference.  Again, *Monell* expressly prohibits municipal liability on the basis of *respondeat superior*.  Thus, Plaintiff's failure to attribute the mail tampering to policy, custom, or deliberate indifference on the part of the City is fatal."); *cf. McTernan v. City of York*, 564

---

[3] Although Peronace defends his *Monell* claim under the policy or custom theory, the Court notes that he has also failed to allege a claim under a failure or inadequacy theory.  *See Forrest*, 930 F.3d at 106.

F.3d 636, 658 (3d Cir. 2009) ("To satisfy the pleading standard, McTernan must identify a custom or policy, and specify what exactly that custom or policy was."). *Contra. Hargrove v. City of Philadelphia*, __ F. Supp. 3d __, No. CIVIL ACTION NO. 21-4082, 2023 WL 3229927, at *1, *6 (E.D. Pa. May 3, 2023) (finding the plaintiff's "adequately alleged . . . that the City had a policy or custom [at CFCF] of releasing [defenseless] inmates late at night into a high crime area with no reliable mode of transportation, proximately causing Hargrove's death" at the hands of "individuals in a car who shot him to death after chasing him back on to CFCF property").

Accordingly, the motion to dismiss is also granted as to Count II.

## V.   CONCLUSION

The City's motion to dismiss is granted. Count I of the Amended Complaint is dismissed with prejudice, and Count II is dismissed without prejudice. Peronace may file a second amended complaint reasserting his § 1983 claim to the extent he can in good faith cure the deficiencies identified in this Memorandum.[4] Any second amended complaint *must* include a redline identifying changes between it and the Amended Complaint.

---

[4] The Court declines to dismiss Peronace's § 1983 claim with prejudice as requested by the City. (Doc. No. 10 at 8–9.) *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007 (recognizing *sua sponte* allowance of amendment is required in the civil rights context). Although Peronace previously amended his Complaint in response to the City's motion for more definite statement, this is the first time that the Court has given guidance on the deficiencies in Peronace's allegations. Peronace is warned, however, that if he files a second amended complaint that fails to correct the issues identified by the Court in this Memorandum, it could result in dismissal of his § 1983 claim with prejudice. *See, e.g., Ezeibe v. City of York*, No. 1:19-cv-00189, 2020 WL 1922632, at *3 n.3 (M.D. Pa. Apr. 21, 2020) ("In the present case, Plaintiff was put on notice of the deficiencies present in his complaint by the Court's prior dismissal, was previously granted leave to amend, and nonetheless failed to plead any additional facts to support a *Monell* claim based on false arrest. Accordingly, the Court finds no reason to allow further amendment of this claim and will dismiss it with prejudice." (citation omitted)).